FILED
2012 Mar-26  AM 09:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TRACY ROSS BYRON, ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v. ) | 2:08-cv-8049-LSC-PWG |
| ) | (2:07-cr-0095-LSC-PWG) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

## MEMORANDUM OPINION

Tracy Ross Byron was sentenced to a 36-month prison term following her guilty plea in this court to charges of bank fraud. Now *pro se*, Byron moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct her federal sentence. (Civ. Doc. 1; Crim. Doc. 107)[1]. The motion has been fully briefed and is ripe for review. Upon consideration, the court concludes that Byron's § 2255 motion to vacate is due to be denied.

## I.    BACKGROUND

On March 28, 2007, a grand jury returned an indictment charging Byron and two co-defendants, Lashonda Peterson and Aretha Smith, with bank fraud in violation of 18 U.S.C. § 1344. (Crim. Doc. 1). The indictment alleged that the three defendants created bank accounts in false names at USAA Federal Savings Bank, an FDIC-insured bank in San Antonio, Texas, and knowingly deposited checks with "insufficient funds" checks to support bank accounts in Birmingham, on five

---

[1]Citations to "Civ. Doc(s) ___" are to the document numbers assigned to the pleadings in the court file of this § 2255 "civil" case, 2:08-cv-8039-LSC-PWG, as reflected on the docket sheet. Citations to "Crim. Doc. ___" are to the document numbers in the underlying "criminal" case, 2:07-cr-0099-LSC-PWG.

identified dates in July 2003.  Each identified deposit constituted a separate count, and the five deposits totaled $19,300.  (Counts 1-5).  The indictment further charged that Byron and Peterson committed the same offense based upon two other deposits made in August 2003, totaling $9,845.  (Counts 6 & 7).  Finally, the indictment asserted that Byron and Smith committed the same offense with a $3,500 deposit in September 2003.  (Count 8).  The court appointed attorney Frederic Washington to serve as Byron's counsel.  The three defendants pled not guilty.

The government filed a superseding indictment on May 2, 2007.  (Crim. Doc. 14).  It differed from the original in several respects.  First, it charged Byron alone in Counts 1 through 5.  Second, Byron and Peterson were charged in Counts 6 and 7 with aiding and abetting each other in connection with the August 2003 deposits, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2.  Third, Byron and Smith were similarly charged in Count 8 with aiding and abetting each other in connection with the September 2003 deposit.  Byron and her co-defendants again pled not guilty.

On July 5, 2007  each of the defendants entered into separate  written plea agreements with the government.  (Crim. Doc. 54; *see also* Crim. Docs. 52, 56)Pursuant to her agreement, Byron promised to plead guilty to Counts 1 through 5 of the superseding indictment.  In turn, the government promised to recommend, among other things, (1) the dismissal of Counts 6, 7, and 8 as to Byron (*id.* at p. 1), (2) a sentence at the "low end" of the United States Sentencing Guidelines (the "guidelines") range, and (3) that Byron be given credit for acceptance of responsibility.  (*Id.* ¶¶ III(a), (b)).  The plea agreement also included a limited waiver of Byron's right to appeal and post-conviction relief, stating as follows:

> As a term and condition of this Plea Agreement I, TRACY ROSS BYRON, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose

upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

> The defendant reserves the right to contest in an appeal or post-conviction proceeding:

> > (a)   Any sentence imposed in excess of the applicable statutory maximum sentence(s); and

> > (b)   Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.

(*Id.* ¶ IV). Under their respective agreements, Peterson agreed to plead guilty to Counts 6 and 7 and Smith agreed to plead guilty to Count 8.

On the same day, July 5, 2007, the three defendants each pled guilty pursuant to the terms of their respective plea agreements. (*See* Transcript of Plea Hearing. (Crim. Doc. 108, Plea Hearing Transcript ("Plea Trans.")). At the plea hearing, Byron stated that she had finished high school and can read. (Plea Trans. at 7). She acknowledged that she had read and understood the documents in her case, including the indictment, that her lawyer had gone over those documents with her. (*Id.* at 7-10). She acknowledged that she understood the elements of the charged offenses and that she had no complaints about her attorney's representation. (*Id.* at 8-9). Byron also represented to the court that she had initialed each material paragraph and signed a six-page "Guilty Plea Advice of Rights Certification" (Crim. Doc. 53 ("Rights Certification")) that had been filed in open court. (Plea Trans. at 9). Byron stated that she had read and reviewed the advice of rights document with her attorney and that she understood it. (*Id.* at 9-10). On the Rights Certification, Byron also indicates that counsel had explained its contents, which included a general description of the expected substance of the plea hearing, the requirements that a guilty plea and her plea agreement must be the

3

knowing and voluntary, the constitutional rights being waived, and an explanation of the charges and possible penalties (including that the sentence may go above the guidelines range). (Rights Certification). The court's plea colloquy also included explanations of the constitutional rights being waived (*id.* at 15-17), the charges of the indictment and the elements of the offenses (*id.* at 17-20), and the range of possible punishment under the relevant statutes and the guidelines. (*id.* at 21-22). Byron also acknowledged that she had discussed the guidelines with her lawyer and understood the range of punishment. (*Id.* at 22-23). The court queried Byron about her plea agreement with the government, and she answered that she had read and understood it before signing it. (*Id.* at 25-26). Byron stipulated to the facts set forth in the plea agreement as true and accurate (*id.* at 26-27). Byron and her attorney also both advised that the plea agreement represented the entirety of the agreement with the government (*id.*), and Byron denied that anyone threatened, forced, or coerced her to plead guilty or had offered her any reward or hope of reward otherwise for doing so. (*Id.* at 29-30). The court then accepted Byron's guilty plea, finding that she was competent and that her plea was knowing and voluntary. (*Id.* at 31-32).

After the United States Probation service filed the presentence investigation report ("PSR"), Byron filed objections to several sentencing conclusions made in the report. (Crim. Doc. 64). Byron first objected to the amount of the potential loss alleged, $39,270, as inflated from the actual loss in light of the fact that the deposited NSF checks constituting the basis for Counts 1 through 5 only amount to $19,300 and in light of the lesser amounts charged against her co-defendants. Second, Byron argued that it was improper to assign to her a two-point points upward adjustment for her role as the alleged organizer of the criminal activity and that she received most of the proceeds. Third, Byron claimed that she was entitled to an adjustment for acceptance of responsibility,

4

notwithstanding her arrest on a pending domestic violence misdemeanor charge.  (*Id.*)

On December 5, 2007, the court held a sentencing hearing.  (Crim. Doc. 109, Transcript of Byron's Sentencing Hearing. ("Sent. Trans.")).  After hearing argument from both sides, the court overruled Byron's first objection to the PSR, related to the amount of the loss.  (Sent. Trans. at 2-3). In connection with Byron's second objection, related to the government's claim that she was due a two-point increase for her organizing role and for receiving most of the proceeds, counsel argued that the other two defendants had already been writing bad checks and that one of the other defendants admitted that she had written one of the checks, for $3,000, and had received all of the proceeds. (*Id.* at 4-5).  Counsel further argued that all three defendants had shared the post-office boxes used in the scheme and that one of the checks was written when Byron was already in federal custody. (*Id*).  The government responded by calling Byron's two co-defendants to testify at the hearing.  (*Id.* at 6-20 (Smith); *id.* at 21-37 (Peterson)).  Following the government's direct examination and cross by Byron's counsel of the two witnesses, the court overruled Byron's objection.  (Sent. Trans. at 38). However, as to Byron's third objection, the court sustained it, holding that Byron was entitled to a two-point decrease for acceptance of responsibility.  (*Id.* at 40-41).

Following the resolution of the objections to the PSR, the court proceeded to calculate the recommended guideline sentence.  Based on an offense level 12 and a criminal history category IV, the court determined that the resulting recommended guideline sentence was 21 to 27 months imprisonment.  (*Id.* at 41-42).  Consistent with the plea agreement, the government recommended the court to impose a sentence within the low end of the guideline range.  (*Id.* at 45-46).  The court, however, declined to do so.  Specifically, the court noted it was troubled by the fact that Byron had pled guilty to conspiracy to defraud the United States and had been sentenced in this court to 33

5

months imprisonment in June 2003, only a month or so before the fraud offense conduct in the instant case. (*Id.* at 47; *see also United States v. Byron*, 2:02-cr-0608-CLS-TMP). The court concluded that other factors in 18 U.S.C. § 3553, citing specifically deterrence and public protection, *see* 18 U.S.C. § 3553(a)(2)(B) & (C), called for a sentence above the guideline range. Therefore, the court imposed a sentence of 36 months imprisonment. (Sent. Trans. 46-47). The court entered a judgment accordingly the next day, December 6, 2007. (Crim. Doc. 79). Byron's counsel filed a "Request for Reconsideration," asking the court to reduce her sentence by three to six months and to have her committed to the Federal Correctional Camp in Coleman, Florida. (Crim. Doc. 80). The court summarily denied reconsideration. Byron did not appeal.

On November 18, 2008, Byron timely filed her instant § 2255 motion to vacate her federal sentence. (Civ. Doc. 1, Crim. Doc. 107 ("§ 2255 Mot.")). Attached to that motion is a supporting memorandum of law (§ 2255 Mot. at 16-39). She has also attached two unsworn declarations made under penalty of perjury pursuant to 28 U.S.C. § 1746 (*id.* at 40-43), an "Addendum" to the motion (*id.* at 44-52)[2]. In her § 2255 motion and supporting memorandum, Byron raises three types of claims. First, she contends that her attorney was constitutionally ineffective, in violation of the Sixth Amendment. Second, she argues that her "indictment and conviction" violate due process and equal protection under the Fifth Amendment. Third, she claims that her sentence was unreasonable and violates the Fifth and Sixth Amendments. The government has filed a response in opposition to

---

[2]Byron's § 2255 motion also attaches certain other evidentiary materials, namely, two Medicare Summary Notices (§ 2255 Mot. at 53-56), a copy of a statement co-defendant provided to U.S. Postal Inspector (*id.* at 57), an envelope from USAA Federal Savings Bank with handwritten correspondence on an USAA account statement (*id.* at 58-59), and a letter from the Federal Bureau of Prisons ("BOP") to Byron dated June 18, 2008, granting her "no duty" for three months and acknowledging that she has a "Care Level of 3 (Unstable, Complex Chronic Care)." (*Id.* at 60).

6

Byron's § 2255 motion (Civ. Doc. 4 ("Gov't Brief")).  Byron has filed a reply thereto (Civ. Doc. 6 ("Dft. Reply"), as well as three additional addenda.  (*See* Civ. Doc. 7 ("Dft. Addendum I"); Civ. Doc. 9 ("Dft. Addendum II"); Civ. Doc. 10 ("Dft. Addendum III")).  Byron's § 2255 motion is ripe for disposition.

## II.   DISCUSSION

### A.   Section 2255 Motions

Section 2255 authorizes a federal prisoner to move the court of conviction to vacate, set aside, or correct her sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States.  28 U.S.C. § 2255(a).  Such a motion is subject to heightened pleading requirements mandating that the motion specify all the grounds of relief and state the facts supporting each ground.  *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994).  When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief."  Rule 4(b), Rules Governing § 2255 Proceedings.  A § 2255 movant is not entitled to a hearing or post-conviction relief when his claims fail to state a cognizable claim or amount to but conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.  *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

### B.   Ineffective Assistance of Counsel

Byron's first ground for relief encompasses several claims alleging that her attorney provided constitutionally ineffective assistance.  The Sixth Amendment affords a criminal defendant the right

to "the Assistance of Counsel for his defence." U.S. Const. amend VI. "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). A claim of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In a habeas corpus action, the petitioner generally carries the burden to establish both components. *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also

prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced that the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010). Likewise, a court may dispense with analysis of the performance prong if it determines that the prejudice prong cannot be satisfied. *See Strickland*, 466 U.S. at 697; *Rose v. McNeil*, 634 F.3d 1224, 1242 (11th Cir. 2011).

### 1.    Validity of Guilty Plea and Plea Agreement

The bulk of Byron's ineffective-assistance claims relate to alleged errors of counsel associated with the plea bargaining and guilty-plea stages of the proceedings. She first contends that counsel was ineffective for not bringing to the court's attention the fact that Byron alleged has "significantly reduced mental capacity." She claims that she "has a seriously impaired ability to understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason and control of the behavior that she knows is wrongful." Byron further contends that her counsel was also ineffective for "doing little investigation of the case, making no effort to present evidence of Byron's psychiatric problems, and failing to determine whether she was even competent to enter a guilty plea." (Dft. Brief at 8). In this vein, she complains that counsel did not make "any

9

of Byron's medical records available to the court from the first time she was in prison," while serving the 33-month federal sentence on her conviction for defrauding the United States. "Such records," she argues, "would have shown how negligent the prison was in taking care of her medical needs." In a distinct but related argument, Byron contends that her counsel was ineffective because he failed to pursue an insanity defense instead of recommending that Byron plead guilty.

Due process prohibits the guilty plea conviction of a person who is mentally incompetent. *Sheley v. Singletary*, 955 F.2d 1434, 1437 (11th Cir. 1992). Counsel has a duty to inquire into a defendant's competency to plead guilty. *Agan v. Singletary*, 12 F.3d 1012, 1018 (11th Cir. 1994). Further, as the court recognized at the sentencing hearing, Byron does have a history of mental health issues. (Sent. Trans. at 49.) However, Byron acknowledges that she was at all relevant times taking her prescribed medications, and she has not claimed they are not effective in controlling her condition. The fact that she was taking such medications does not mean she was incompetent. *Sheley*, 955 F.2d at 1438-39; *Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985). Byron did not exhibit any indication at any of the proceedings in this court that might have suggested that she was incompetent to stand trial or plead guilty. Her counsel has also submitted an affidavit stating that Byron never at any point in his interactions with her exhibited any signs of being incompetent or suffering from diminished legal capacity. Indeed, his affidavit confirms that Byron was at all times familiar with the circumstances of her case, was experienced with the workings of the justice system, including the sentencing guidelines and the nature of plea bargaining. It also thoroughly details the numerous steps Byron was taking on her own to assist in her defense. Byron does not dispute any of that. Other than Byron's instant self-serving allegations about her mental history generally, there is nothing in the record to support that Byron might have been incompetent at any

10

relevant time or that she suffered from diminished mental capacity at the time of her offense conduct. Indeed, the nature of the multi-state, multi-person, check-kiting fraud scheme in which Byron engaged tends to negate the notion that she did not understand the nature of her actions or that they were wrong.  Likewise, the lengthy, coherent, and thorough *pro se* legal briefs that she alone has signed and filed with this court strongly undercut any suggestion that she might have been incompetent at the time any of those documents were filed.  Byron has not shown that counsel was ineffective for failing to have her psychologically evaluated to determine if she was competent in the absence of any concrete examples suggesting that, at the time of her plea, she did not have the ability to consult with counsel or did not understand the nature of the proceedings against her.  *Alexander v. Dugger*, 841 F.2d 371 (11th Cir. 1988).  There is also no indication that an insanity defense might have prevailed or that counsel was ineffective for failing to further pursue such a plea.

Byron also argues that, even aside from her alleged incompetency and counsel's failure to pursue an insanity defense, her plea agreement and associated guilty plea resulted from her counsel's deficient advice and was thus not knowing and voluntary.  *Hill v. Lockhart*, 474 U.S. 52 (1985).  Specifically, she now contends in her supporting brief that her counsel did not adequately explain to her that her sentence could be calculated based on an amount in excess of the $19,300 "insufficient funds" checks she was accused of depositing in Counts 1 through 5.  In her unsworn "addendum" attached to her § 2255 motion, Byron summarily asserts that counsel was also ineffective at the pleading stage based on the following acts and omissions:

(1)     failing to make "sure Byron clearly understood the nature of the constitutional protections she was waiving ... [and] the charges in the plea agreement";

(2)     failing to "accurately document the terms of the plea agreement";

11

(3)    "allow[ing] the government to inject a statutory maximum punishment of imprisonment of 30 years [into the plea agreement];"

(4)    "not fully explaining to make sure that Byron understood the courts were not bound to comply with the prosecutors recommendation for sentencing ... [and instead telling her] that she would get the sentence that the prosecutor recommended ... at the low end of the guidelines";

(5)    telling Byron prior to entering into the plea agreement and pleading guilty "that she would be sentenced to ten to sixteen months."

These claims are without merit.   The plea agreement and the Rights Certification forms that Byron signed and the transcript of her plea colloquy, made under oath, with this court utterly belie Byron's assertions that she was misled about or was not made sufficiently aware of the terms of her guilty plea agreement, the nature or consequences of her guilty plea, the rights she was waiving by pleading guilty, and what the plea agreement and the guilty plea meant in terms of sentencing. Significantly, Byron acknowledged at her plea hearing that she had no complaints regarding her counsel's performance.  *See United States v. Freixas*, 332 F.3d 1314, 1320 (11th Cir. 2003).  She stated that she could read, and she admitted that she did read, understand, and review with counsel all the documents in her case, including specifically the indictment, the plea agreement, and the Rights Certification form.   Her plea agreement properly discloses the maximum sentence for her offense as 30 years.   The government did not "insert" that provision in the plea agreement to prejudice Byron's rights; it simply advises her of the maximum sentence under the statute.   The plea agreement further states that, although the government would recommend a sentence at the low end of the sentencing guidelines range as part of the plea agreement, the guidelines are advisory in nature and that court "may use facts it finds by a preponderance of the evidence to reach an advisory guideline range" and that "any sentence recommended by the government is **NOT BINDING UPON**

12

**THE COURT**, and that the court need not accept the government's recommendation." (Crim. Doc. 52, Plea Agreement (emphasis supplied)).  The plea agreement also recites that "**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY**." (*Id.* (emphasis supplied)).  The Rights Certification also includes numerous individual disclosures, each initialed by Byron, which include: that the plea agreement must be disclosed to the court and that if the agreement provides that the government will recommend a particular sentence, the court is not bound by the agreement but the defendant will not have a right to withdraw the guilty plea.  The Rights Certification also states that any sentence imposed will be subject to the guidelines but that the court may go above or below the guidelines in some circumstances.  The court's Rule 11 plea colloquy also covered these topics as well as the requirements that her guilty plea be knowing and voluntary, the elements of the offense, the rights she was waiving by pleading guilty, and the substance of the provisions of the plea agreement.  The record shows that Byron was aware of the information she now claims to have lacked.  Her guilty plea and plea agreement were entered into knowingly and voluntarily.  *See United States v. Smith*, 654 F.3d 1263, 1265 (11th Cir. 2011); *United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005); *United States v. Cole*, 415 Fed. App'x 147, 148-49 (11th Cir. 2011).

Also, in order to show prejudice on a claim that counsel's ineffectiveness caused a guilty plea, a defendant is required to show that there is a reasonable probability that, absent counsel's errors, she would not have pled guilty and would have instead insisted upon going to trial.  *Hill*, 474 U.S. at 59-60.  Despite Byron's laments about her counsel's supposedly numerous deficiencies in connection with advising her about the nature and risks of her plea agreement and guilty plea, Byron

has not actually alleged that, had she been properly advised, she would not have pled guilty or that she would have insisted on going to trial.  Rather, she seems to suggest only that she should have been allowed to plead guilty and be sentenced to shorter prison term, consistent with what she says she understood to be the terms of her plea agreement and the law.[3]  However, without an allegation that she would not have pled guilty, she has not alleged facts showing sufficient prejudice and these claims fail.  *See Hill*, 474 U.S. at 60; *Slicker v. Dugger*, 878 F.2d 1380, 1382 (11th Cir. 1989) (holding that habeas petition did not allege prejudice under the *Hill* standard); Slicker v. Wainwright, 809 F.2d 768, 770 (11th Cir. 1987); *cf. Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (where defendant claimed that counsel's ineffectiveness led him to reject plea offer, he failed to show prejudice where he was equivocal about whether he would have accepted the plea offer had he been properly advised).  These claims are due to be denied.

### 2.      Ineffective Assistance at Sentencing and in Failing to Appeal

Byron also makes several claims that allege that her counsel was ineffective at sentencing and in failing to challenge her sentence on appeal.   Specifically, Byron states that counsel was ineffective in failing to cross-examine her co-defendants, who testified at her sentencing, about alleged prior inconsistent statements.  She also contends that her counsel should have argued at sentencing and on appeal that the court was not authorized to impose a sentence above the guideline range and that her sentence was excessive.  On the latter score, Byron alleges that her counsel "knew Byron had been unreasonably sentenced [and that], therefore, an appeal for an unreasonable sentence under [*United States v. Booker*, 543 U.S. 220 (2005),] would have been in order."

---

[3]For instance, Byron emphasizes that "[h]ad she been sentenced at the terms to which she pled guilty, the sentence would have been half as long or 50% less."

14

To the extent Byron argues in these claims that her counsel was ineffective at sentencing specifically, including at her sentencing hearing or in making objections to the PSR, they are barred by the waiver in her plea agreement.  That waiver precludes Byron from pursuing relief on direct appeal or by collateral attack, including under § 2255, except insofar as she challenges a sentence above the statutory maximum or an upward departure from the guidelines range. Such a plea agreement waiver is enforceable where entered into knowingly and voluntarily and may preclude claims of ineffective assistance claims at sentencing. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).  For reasons already discussed, Byron has failed to show that her guilty plea or her entry into the plea agreement was not knowing and voluntary.   Further, Byron specifically acknowledged to the court that she was aware of the appeal/collateral attack waiver in the plea agreement.  (Plea Trans. at 26).  The court concludes that the plea agreement waiver is valid and enforceable.  Accordingly, the waiver bars these claims to the extent they assert that counsel was ineffective at sentencing.

To the extent that Byron contends that her attorney was ineffective in failing to file an appeal raising a challenge to her sentence, it will be assumed that the waiver in her plea agreement does not preclude such a claim.  In *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), the Eleventh Circuit held that a defendant had stated a viable claim for § 2255 relief on his claim alleging that his counsel was ineffective because he failed to file an appeal as directed by the defendant despite the fact that the defendant signed a plea agreement containing a waiver of his right "to appeal [his] sentence, directly or collaterally, ... except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or sentence in violation of the law apart from the sentencing guidelines."  433 F.3d at 790.  In so doing, the court indicated that "since the defendant had not

waived *all* of his appellate rights, if the evidence showed that he had asked his attorney to appeal, he would then be entitled to an out-of-time appeal." *Id.* at 793-94 (citing *United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005) (emphasis original)); *see also Patel*, 252 Fed. App'x at 973 ("As we determined in *Gomez-Diaz*, ... an appeal waiver does not relieve counsel of the duty to file a notice of appeal on request.").

However, regardless of whether any of these claims are precluded by the waiver, they are without merit. To the extent that Byron complains that her counsel failed to cross-examine her co-defendants, the record confirms that Byron's counsel did just that at the sentencing hearing, the only time they offered testimony in the case. Byron also complains about counsel's failure to impeach one or both of them with one or more former inconsistent statements. However, Byron fails to identify any such statement or to whom it was allegedly made. Further, her allegations fail to establish that her counsel was aware of and could prove existence of the statement at sentencing or that such impeachment might have made any difference in the outcome of her sentencing hearing. Byron cannot establish a deficient performance or prejudice on these claims.

Byron's claims that her counsel was ineffective because he failed to make certain arguments at sentencing regarding the length of her sentence are similarly without merit. She seems to contend that her counsel should have argued that *Booker* precluded the imposition of a sentence above the guideline range, based upon the Supreme Court's recognition in that case that "departures [from the guidelines sentence] are not available in every case, and in fact are unavailable in most." 543 U.S. at 226-27. She emphasizes, "No competent counsel is unaware of the *Booker* case."

Byron misapprehends the import of both *Booker* generally and the specific quotation she cites from the case. *Booker* held that the guidelines are subject to jury trial requirements of the Sixth

16

Amendment and that, as a result, a mandatory application of the guidelines is unconstitutional.  The quote Byron cites was used by the Supreme Court to explain that, at the time of the *Booker* decision in 2005, application of the guidelines *had been* mandatory, thereby precluding departure except in very limited circumstances.  As a result of *Booker*, however, the guidelines became advisory only, so district courts had *greater* freedom to impose sentences above and below the guidelines sentence.  Byron also seems to claim that counsel should have argued that the court violated *Booker* by making a guidelines determination as to the amount of the potential loss based on an amount greater than the amount of the checks in the counts to which Byron pled guilty.  However, the court expressly treated the guidelines as advisory in sentencing Byron (Sent. Trans. at 42-43), so there was no *Booker* error.  *See United States v. Woodward*, 459 F.3d 1078, 1088 n. 9 (11th Cir. 2006).  The failure to raise such an argument was neither deficient nor did it result in prejudice.

Byron suggests that her counsel should have also argued that her "criminal history was not in any way serious enough to warrant such a large increase in the sentence."  At the outset, the court would note that Byron suggests that the upper limit of her guideline range, based on her offense level of 12 and her criminal history category of IV, was 21 months.  She is wrong.  As the court stated at her sentencing hearing, the guidelines range for such a defendant was and is 21 to 27 months.  USSG Ch. 5 Pt. A, Sentencing Table (2007); *id.* (2011).  Furthermore, Byron has failed to show that her counsel had any basis for further contesting at sentencing the court's imposition of a sentence above the guideline range, given the evidence of her leadership role in the offense, the actual and potential losses involved, and, most importantly, the fact that her Byron's offense conduct, occurring in July 2003, came directly on the heels of her being sentenced by this court, in June 2003, in a separate case to a 33-month term for defrauding the United States.  Such evidenced a clear contempt for the law,

justifying the above-guidelines sentence. *See United States v. Brown*, 437 Fed. App'x 777, 778 (11th Cir. 2011) (holding that defendant failed to show that 36-month sentence for bank fraud was unreasonable even though it varied upward from the top of the guideline range by 20 months).

Byron also seems to suggest that her counsel was ineffective for failing to appeal to challenge her sentence as unreasonable. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court applied the test set forth in *Strickland* and reiterated the long established rule that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner. 528 U.S. at 476-77. The Supreme Court further held that, even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal. *Id.* at 478. "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case.... If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id.* (citing *Flores-Ortega*, 528 U.S. at 480); *see also Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007). To show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484. However, to establish prejudice the defendant need not demonstrate further that he had arguably meritorious grounds to argue on appeal. *See id*; *Gomez-Diaz*, 433 F.3d at 793-94 (where counsel's performance was deficient based on a failure to comply with the

18

defendant's specific instruction to appeal, defendant was entitled to an out-of-time appeal notwithstanding that the defendant's *pro se* § 2255 motion did not articulate a claim that would have fallen outside the scope of the appeal waiver in his plea agreement).

Byron has not alleged that she specifically instructed her counsel to appeal and he failed to comply.  Nor has she alleged facts supporting that her counsel breached a duty to consult with her about the potential advantages and disadvantages of filing an appeal.  Nor has she alleged that she would have timely appealed absent counsel's deficient performance, as required to show prejudice under *Flores-Ortega*.  Rather, all Byron states is that her counsel "knew Byron had been unreasonably sentenced, [and that] therefore, an appeal for an unreasonable sentence under *Booker* would have been in order."  That passing suggestion is not enough.  For reasons already stated, the record belies Byron's claim that her sentence was unreasonable, and for the same reasons, the record belies that her counsel should have suspected that such a claim might have even any arguable merit on appeal.  The court concludes that Byron's allegations are insufficient to establish either deficient performance or prejudice under *Flores-Ortega* to support a claim that counsel was ineffective relative to the failure to appeal.  Accordingly, any such claim in the § 2255 motion is due to be denied.

### C.    "Indictment and Conviction" Violate the Fifth Amendment

Byron next contends that her "indictment and conviction" were "pursued in violation of [her] Fifth Amendment right[s] to due process and equal protection."  Although she cites the principle of equal protection in connection with these claims, she does not articulate how it applies. Rather, she first complains that a confession she made to Postal Inspector Villari was allegedly obtained in violation of her Fifth Amendment right against self-incrimination.  She contends specifically that

19

Villari obtained the confession through a promise of a reward, namely that any sentence resulting from the bank fraud confession would run concurrently with the federal sentence she was serving at that time for defrauding the United States.  Byron also argues that her right to due process under the Fifth Amendment was violated because the government allegedly delayed in indicting her for purposes of obtaining a tactical advantage.

First, these claims are barred by the waiver in Byron's plea agreement.  That waiver precludes Byron from pursuing relief on direct appeal or by collateral attack, including under § 2255, except insofar as she challenges a sentence above the statutory maximum or an upward departure from the guidelines range.  For reasons already discussed, that the waiver is valid and enforceable, and Byron's instant claims do not challenge either a sentence beyond the statutory maximum or an upward departure.   Accordingly, the waiver bars these claims.

Second, even assuming that the plea agreement did not cover these claims, they would still be barred as procedurally defaulted.  A § 2255 motion is not a substitute for a direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  Where a claim could have been raised on direct appeal but was not, it is generally subject to procedural default, precluding review under § 2255.  *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Boyle v. United States*, 446 Fed. App'x 216, 220 (11th Cir. 2011).  Byron never raised these claims previously in this court, nor did she raise them on direct appeal.  Accordingly, this claim is procedurally defaulted and cannot be the subject to § 2255 relief unless Byron can first establish either (1) (a) cause and (b) actual prejudice or (2) that she is actually innocent of the offenses for which she was convicted, so as to excuse the default.  *See Bousley*, 523 U.S. at 622.

Byron does not expressly claim that she is actually innocent, nor has she alleged facts that

20

might meet the demanding standards required for such a showing. *See Bousley*, 523 U.S. at 623-24; *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *House v. Bell*, 547 U.S. 518, 537 (2006). On the other hand, the court notes that Byron has claimed, as discussed above, that her counsel was constitutionally ineffective based on various alleged omissions. A showing that counsel failed to raise or preserve an issue so as to result in that issue being procedurally defaulted on habeas review can constitute cause excusing the default. *See Murray v. Carrier*, 477 U.S. 478, 487-88 (1986). However, as previously discussed, Byron's allegations fail to establish ineffective assistance under *Flores-Ortega* with regard to her counsel's failure to appeal. Accordingly, Byron's failure to pursue her challenge to the court's upward departure at sentencing on direct appeal renders the claims procedurally defaulted.

However, even if these claims were properly presented, they still fail. First, the confession that Byron states she gave to Postal Inspector Villari is of no moment. Byron's conviction was based upon her own guilty plea. The confession was not used to convict her, and it is entirely unclear what role, if any, the confession, might have played had the case gone to trial. Further, Villari asserts in an affidavit, and Byron fails to dispute, that Byron made the admissions at issue after signing a *Miranda* waiver. Even assuming for the sake of argument that the confession was obtained in violation of Byron's Fifth Amendment right against self-incrimination, Byron has failed to explain how it resulted in prejudice. *See United States v. Razz*, 240 Fed. App'x 844, 847 (11th Cir. 2007) (any error in trial court's denial of defendant's motion to suppress statement allegedly obtained in violation of *Miranda* was harmless where the statement was not admitted at trial). Further, a counseled guilty plea is not open to collateral attack on the ground that counsel may have misjudged the admissibility of the defendant's confession under *Miranda* absent a showing that counsel's

advice regarding on the matter rose to the level of constitutionally ineffective assistance. *McMann*, 397 U.S. at 770-71. Byron has made no such showing. Accordingly, Byron would not be entitled to relief on this claim in any event.

Byron's claim of undue delay in indicting her is likewise without merit. Byron was indicted within the 10-year statute of limitations applicable to bank fraud under 18 U.S.C. § 1344. *See* 18 U.S.C. § 3293. In such a circumstance, the due process would only require dismissal of an indictment "if it were shown .. that the pre-indictment delay ... caused substantial prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971); *see also United States v. Lovasco*, 431 U.S. 783, 788-90 (1977); *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011). Byron has failed to allege facts supporting either that she suffered prejudice from any delay or that the government delayed in indicting her to gain a tactical advantage. Thus, this claim is due to be denied.

### D.   Length of Sentence Violates Fifth and Sixth Amendments

In her final claims, Byron contends that the court's imposition of a 36-month sentence, representing an upward departure from the guideline range of 21 to 27 months[4], was "unreasonable" and violates unspecified provisions of the Fifth and Sixth Amendments. This claim is due to be denied because it is procedurally defaulted. Even if not defaulted, the claim would still fail.

Byron argues initially that these claims are reviewable because they are not barred by the

---

[4]Byron asserts that the upper limit of her guideline range, based on her offense level of 12 and her criminal history category of IV, was 21 months. She is wrong. As the court stated at her sentencing hearing, the guidelines range for such a defendant was and is 21 to 27 months. USSG Ch. 5 Pt. A, Sentencing Table (2007); *id.* (2011).

waiver of appeal and collateral attack rights in her plea agreement.  She emphasizes that one of the exceptions to the waiver allows her to contest an upward departure.  And so it does.  The problem for Byron is that, regardless of that waiver, these claims are still subject to procedural default because they could have been but were not raised on direct appeal.  *See McKay*, 657 F.3d at 1196 *Boyle*, 446 Fed. App'x at 220.  Accordingly, this claim is procedurally defaulted and cannot be the subject of § 2255 relief unless Byron can first establish either (1) (a) cause and (b) actual prejudice or (2) that she is actually innocent of the offenses for which she was convicted, so as to excuse the default.  *See Bousley*, 523 U.S. at 622.  Again, Byron fails to allege facts supporting that she is actually innocent.  And while she has alleged that her counsel was ineffective for various reasons, she has not sufficiently alleged that her counsel was ineffective in connection with the failure to appeal.  Thus, Byron's failure to pursue her challenge to the court's upward departure at sentencing on direct appeal renders the claims procedurally defaulted.

Even if the claims were not defaulted, they would fail on other grounds.  Although Byron cites the Fifth and Sixth Amendments in connection with her claims regarding the length of her sentence, she fails to clearly articulate what provisions of those Amendments she conceives to be applicable or how they have been violated.  Byron does assert rather summarily that her sentence violates *Booker*, which held that the guidelines are subject to jury trial requirements of the Sixth Amendment and that, as a result, a mandatory application of the guidelines is unconstitutional.  Byron appears to assert that claim on the basis that the court based its guideline calculation on a total loss amount that she did not admit to and based only on a preponderance of the evidence at sentencing.  However, as stated previously, the court expressly treated the guidelines as advisory in sentencing Byron, so there was no *Booker* error.  *See Woodward*, 459 F.3d at 1088 n. 9.

23

Byron also seems to argue that her sentence violated due process and/or equal protection principles incorporated within the Due Process Clause of the Fifth Amendment based upon the disparity between her 36-month sentence and the sentences of her co-defendants, Peterson and Smith, who received only 6 months and 2 months, respectively. (*See* Crim. Docs. 73, 76). However, the court found that Byron was more culpable because of her role as an organizer, that her offenses involved greater losses, that she profited more, and that her offenses occurred almost immediately after she had been sentenced to 33 months imprisonment in this court for defrauding the United States. Byron contests the court's findings on those matters, but she fails to demonstrate that the findings were unsupported by the evidence or that the court abused its discretion. Byron's sentence is not rendered unconstitutional or unreasonable based on the lighter sentences of her co-defendants. *See United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011); *United States v. Bushert*, 997 F.2d 1343, 1355 (11th Cir. 1993); *Edwards v. United States*, 795 F.2d 958, 961 n. 2 (11th Cir. 1986); *United States v. Mann*, 615 F.2d 668, 672 (5th Cir. 1980)[5]; *United States v. Hayes*, 589 F.2d 811, 827 (5th Cir. 1979). Byron's sentencing challenge based on equal protection and due process[6] are

_____

[5]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[6]Although it is highly doubtful that Byron's motion sufficiently raises a such claim, the court recognizes that some defendants have argued that an above-guidelines sentence violates the Fifth Amendment where the offense conduct occurred before *Booker*, when application of the guidelines was still considered mandatory in most cases. *See, e.g., United States v. Amedeo*, 487 F.3d 823, 831-32 (11th Cir. 2007); *United States v. Martinez*, 434 F.3d 1318, 1323 & n. 5 (11th Cir. 2006); *United States v. Duncan*, 400 F.3d 1297, 1307 (11th Cir. 2005). Such claims have been founded on the principle that due process notice principles require that a defendant be given fair warning of the potential criminal punishment for an offense at the time it was committed. *See Rogers v. Tennessee*, 532 U.S. 451, 468 (2001) (discussing the Fourteenth Amendment Due Process Clause). Byron committed her offense conduct in 2003, before *Booker*, so the guidelines were mandatory. The guidelines provided for range of 21 to 27 months imprisonment, less than

24

due to be denied.

Most of Byron's arguments, and almost all of the cases she cites, in connection with these claims deal with alleged misapplication of the guidelines or in imposing an "unreasonable" sentence in light of the factors set forth in 18 U.S.C. § 3553.[7]  Such non-constitutional errors are generally not cognizable on § 2255 review.  *See Lynn*, 365 F.3d at 1232-33; *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998).  Even if they were, Byron cannot show that her 36-month sentence was substantively unreasonable under § 3553.  A sentence that was nine months above the 27 months at the top of the guidelines range was reasonable and justified by the fact that Byron's offense conduct occurred only one month after this court had sentenced her to a 33-month term for defrauding the United States.  *See Brown*, 437 Fed. App'x at 778.  These claims are due to be denied.

## III.   CONCLUSION

Based on the foregoing, Byron's motion to vacate under § 2255 (Civ. Doc. 1; Crim. Doc. 107), is due to be DENIED, and this action is due to be DISMISSED WITH PREJUDICE.  A separate final order will be entered.

---

the 36-month sentence she received.  However, the bank fraud statute authorized a prison sentence of up to 30 years for her offenses, 18 U.S.C. § 1344, and that statutory maximum provided sufficient notice of the potential punishment to satisfy due process. *See Amedeo*, 487 F.3d at 831-32; *Martinez*, 434 F.3d at 1323 & n. 5; *Duncan*, 400 F.3d at 1307.

[7]*See United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005); *United States v. Pickett*, 475 F.3d 1347 (D.C. Cir. 2007); *United States v. Rusher*, 966 F.2d 868, 883 (4th Cir. 1992); *United States v. Cervantes*, 878 F.2d 50, 55 (2d Cir. 1989); *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005); *United States v. Wiley*, 509 F.3d 474, 478 (8th Cir. 2007); *United States v. Maurstad*, 454 F.3d 787, 789-90 (8th Cir. 2006); *United States v. Lyons*, 450 F.3d 834, 836-37 (8th Cir. 2006); *United States v. Shannon*, 414 F.3d 921, 922-24 (8th Cir. 2005).

Done this 26<u>th</u> day of <u>March 2012</u>.

L. Scott Coogler
United States District Judge

167458